Filed 3/26/24  In re Brenda E. CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re BRENDA E., a Person Coming Under the Juvenile Court Law. | B325056 |
| THE PEOPLE, | (Los Angeles County Super. Ct. No. FJ57926) |
|     Plaintiff and Respondent, | |
| v. | |
| BRENDA E., | |
|     Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Christina Hill, Judge.  Affirmed.

Mary Bernstein, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Zee Rodriguez, Supervising Deputy Attorney General, and Nicholas J. Webster, Deputy Attorney General, for Plaintiff and Respondent.

Seventeen-year-old Brenda E. (Minor) shoved a school employee who was trying to separate Minor and another student who were arguing in a school restroom. The juvenile court sustained a juvenile court petition charging Minor with battery on a school employee in violation of Penal Code section 243.6.[1] We are asked to decide whether substantial evidence supports the juvenile court's finding that the employee was engaged in the performance of her duties at the time of the incident.

## I. BACKGROUND

The Los Angeles County District Attorney charged Minor in a Welfare and Institutions Code section 602 petition with a misdemeanor violation of section 243.6. The statute makes it an offense to commit a battery against "a school employee engaged in the performance of his or her duties." (§ 243.6.)

At the adjudication hearing, Charlotte Hinrichs (Hinrichs) testified she was employed as an intervention coordinator at Roybal Learning Center in Los Angeles. She was responsible for "supervis[ing] campus aides, . . . monitor[ing] the campus for safety, and . . . ensur[ing] that students were in class." Hinrichs was trained "on how to respond to physical altercations between students" and her duties included "preempt[ing] situations."

One afternoon in December 2021, Hinrichs was supervising students and saw Minor walking toward a restroom in a "very focused" and "unusual" manner. Minor entered the restroom, followed by another student named Abigail. Hinrichs suspected the students were going to "vape," but she heard shouting when

---

[1]     Undesignated statutory references that follow are to the Penal Code.

she reached the restroom.  Hinrichs entered the restroom and saw Minor and Abigail "shouting at each other."  The shouting was "very loud[ ]," and the situation was "pretty heated."

Hinrichs put her arm around Abigail's waist and attempted to pull her away from Minor.  She described this maneuver as a "trick" that "gets one student out of [a] situation right away" without "embarrass[ing] them."  Hinrichs developed the maneuver on her own.  Getting involved in physical altercations between students was "not part of [her] training," but Hinrichs testified the maneuver was "not getting involved in a fight."  She used the technique "before a fight would ever occur.  It is de-escalating, moving one party away from . . . the situation."

Hinrichs testified Abigail did not resist her, but moved her shoulder "[l]ike[ ] she wanted to stay."  As Hinrichs attempted to move Abigail, Minor used both hands to push Hinrichs in the chest.  Hinrichs then took a step back.  Minor put a finger close to Hinrichs' face and told her, "If you do that again, I'm going to do to you what I'm about to—I want to do to her [i.e., Abigail]."

Hinrichs was "a little shaken," but she again tried to "scoop" Abigail "out of the bathroom."  Minor shoved Hinrichs in the chest again.  This time the shove was harder, and Hinrichs hit her head against a wall.  At that point, Hinrichs "stood there" and Minor "either grabbed Abigail's arm or her hair" and "pulled Abigail toward her."  Minor hit Abigail and Hinrichs radioed for help, realizing she was unable to de-escalate the situation.

Before help arrived, Minor and Abigail fought and Hinrichs tried to keep other students from entering the restroom.  Some of the students "begg[ed]" Hinrichs to let them break up the fight, and she eventually allowed them to do so.  Around the same time, another adult came to help.

Minor testified at the adjudication hearing. She said Hinrichs put her arm between her and Abigail when they were "both just arguing" to try to stop them from fighting. Minor told Hinrichs that if she were to touch her (Minor), Minor was going to hit her (Hinrichs). Minor admitted she then started fighting with Abigail, but Minor claimed she never pushed Hinrichs or "put [her] hands on [Hinrichs]."

After the fight, Minor and Abigail were "bruised up." Hinrichs initially thought she was not injured, but she "started to see double" the next day. She saw a doctor who "was . . . going to prescribe medicine for the headaches," but the symptoms eventually went away on their own.

The juvenile court found Hinrichs to be "very credible," explaining she had no motive to lie and appeared "uncomfortable and frankly sad about coming to court and having to testify the way that she did." Minor was "much less" credible, especially because she acknowledged having approached Abigail in their group home on the day of the hearing to tell her the case could have serious consequences and she should be "honest" and testify Minor did not push Hinrichs.[2]

The juvenile court sustained the petition, placed Minor on non-wardship probation for six months, set the maximum term of confinement as one year, and imposed various conditions of probation.

## II. DISCUSSION

Minor contends there is insufficient evidence to support a finding that Hinrichs was engaged in the performance of her

---

[2]    Abigail did not testify at the hearing.

duties as a school employee and her offense accordingly must be reduced to the lesser included offense of misdemeanor battery.[3] Minor principally argues Hinrichs' testimony that "getting involved" in physical altercations between students was "not part of [her] training" must be understood to mean breaking up fights was not among Hinrichs' duties. Even if this is correct, however, there is still substantial evidence that Hinrichs was engaged in the performance of her duties: Hinrichs intervened before the students' verbal confrontation escalated to a physical altercation.

"When a battery is committed against a school employee engaged in the performance of his or her duties, or in retaliation for an act performed in the course of his or her duties, whether on or off campus, during the school[ ]day or at any other time, and the person committing the offense knows or reasonably should know that the victim is a school employee, the battery is punishable by imprisonment in a county jail not exceeding one year, or by a fine not exceeding two thousand dollars ($2,000), or by both the fine and imprisonment. However, if an injury is inflicted on the victim, the battery shall be punishable by imprisonment in a county jail for not more than one year, or by a fine of not more than two thousand dollars ($2,000), or by imprisonment pursuant to subdivision (h) of Section 1170 for 16 months, or two or three years. . . ." (§ 243.6.)

---

[3]     Battery, defined as "any willful and unlawful use of force or violence upon the person of another" (§ 242), is a lesser included offense of battery on a school employee. (CALCRIM No. 949.) Reducing the offense to simple battery (rather than battery on a school employee) would reduce Minor's maximum confinement period from one year to six months. (§§ 243, 243.6.)

5

Minor does not dispute that Hinrichs was a school employee, that she knew Hinrichs was a school employee, or that she committed a battery against Hinrichs. She contends only that Hinrichs was not engaged in the performance of her duties for purposes of section 243.6. We will assume for the sake of argument that Hinrichs was not assigned to physically intervene in fights between students. Our analysis therefore turns on whether there is substantial evidence that Minor and Abigail were not yet fighting when Hinrichs intervened (Minor does not dispute Hinrichs' duties included *preventing* physical altercations).

Although Minor and Abigail were shouting at one another within a larger-than-average restroom stall, both Hinrichs and Minor testified the situation had not yet escalated to a physical altercation when Hinrichs put her arm around Abigail's waist. Hinrichs employed this maneuver "before a fight would ever occur," and Minor testified she and Abigail were "both just arguing." Indeed, Minor acknowledges in her reply brief that she "had not yet hit Abigail" when Hinrichs intervened.

Notwithstanding this testimony, Minor contends "the fight had already begun" because Hinrichs testified Abigail resisted Hinrichs' intervention by moving her shoulder "[l]ike[ ] she wanted to stay." Minor characterizes this motion as an unambiguous signal that Abigail "did not wish to save face" and let Hinrichs remove her from the situation. Minor's factual inference is questionable—a token gesture of willingness to fight is perfectly consistent with a desire to be pulled away with dignity intact—but it is irrelevant in any case. The only evidence in the record concerning the scope of Hinrichs' duties is her testimony, and the only line she (arguably) drew was the point at

6

which a conflict between students escalates into physical violence.  There is no sense in which Abigail's resistance to being pulled away from Minor can be considered the start of such physical violence.

Minor's suggestion that it is "notabl[e]" Hinrichs "continued to try to pull Abigail away even after Abigail resisted and after [Minor] shoved Hinrichs" is also beside the point.  Even if Hinrichs somehow went beyond her duties by trying to extricate Abigail after Minor shoved Hinrichs the first time—such that the second shove did not constitute a violation of section 243.6—the initial shove was sufficient to support the juvenile court's finding that Minor violated section 243.6.

## DISPOSITION

The judgment is affirmed.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

BAKER, Acting P. J.

We concur:

MOOR, J.

KIM, J.

7